# COURT OF APPEALS OF VIRGINIA

---

**Record No. 1976-24-1**

---

VERNON WALTER BROOKS

v.

COMMONWEALTH OF VIRGINIA

---

Before: Judges Malveaux, Friedman and Lorish

Argued at Norfolk, Virginia

Opinion Issued July 21, 2026[*]

---

**FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE**
Marjorie A. Taylor Arrington, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent Defense Commission, on briefs), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

---

## MEMORANDUM OPINION BY
## <u>JUDGE LISA M. LORISH</u>

Vernon Walter Brooks was convicted of nine counts of indecent liberties with a child by a

custodian, seven counts of aggravated sexual battery of a victim under the age of 13, and two counts

of object sexual penetration and acquitted on one count of object sexual penetration. While he lived

with the victim, his granddaughter, he argues that there was insufficient evidence to show he had a

custodial or supervisory relationship to support a conviction for any of the counts. Brooks also

contends that there was insufficient evidence of a sexual act to support the ninth indecent liberties

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

count and that the trial court erred by not removing a juror for cause. We find no error and affirm the trial court's judgment.

BACKGROUND

*The Underlying Offenses*

In 2018, K.B.[2] lived in Chesapeake in a home with her mother, father, two siblings, and Brooks, her grandfather. Brooks had his own room in the home. The family typically had dinner together at night. K.B. was 11 years old in 2018 and Brooks was 58 years old.[3]

K.B. started sixth grade in September 2018 and "a couple of weeks" later, an incident occurred after the family ate dinner. K.B. was walking through the kitchen when Brooks "waved his hand at" her, making a "come here type motion." K.B. went to Brooks's room and the door closed. Once K.B. entered Brooks's room, she sat on the edge of his bed. Brooks put his hand on K.B.'s "leg closer to [her] vagina," but he did not "touch [her] down there in that moment." K.B. wore "either sleep pants or sweat pants" and "an oversized sweater." Brooks wore a t-shirt and either "boxers or shorts." K.B. and Brooks were the only two in Brooks's room. K.B. felt "confused and a little weirded out" when Brooks touched her leg and explained that her "heart was racing." The incident lasted "a couple of minutes" before K.B. left. After K.B. left Brooks's room, she went to her parents' bathroom to shower because she "felt uncomfortable."

A second incident occurred before Halloween 2018. K.B. "was getting [her] stuff for school" and "was going to get water from the kitchen." Brooks waved for her to come to his bedroom. K.B. went to Brooks's room and sat on the edge of his bed. Brooks touched K.B.'s vagina overtop of her clothing. Once K.B. left Brooks's room, she went to her parents' bathroom and showered.

---

[2] We refer to the victim by her initials to protect her privacy.

[3] At the time of trial, K.B. was 17 years old and Brooks was 64 years old.

- 2 -

A third incident occurred before Thanksgiving 2018.  When K.B. was in the kitchen, Brooks "verbally called [her] his way" saying "come here."  K.B. again went into Brooks's bedroom.  While they sat on the bed, Brooks touched K.B. in multiple places.  Brooks touched K.B.'s vagina underneath her pants but overtop her underwear.  He also touched her breasts.  K.B. left the room "shaking and scared."  K.B. went to her parents' bathroom and showered.

A fourth incident occurred later in autumn 2018.  Brooks verbally told her to come to his bedroom.  Brooks touched her breasts.  He then attempted to untie her pants.  Even though K.B.'s pants were double-knotted, Brooks was eventually able to untie them and proceeded to touch and penetrate her with his fingers.  K.B. pushed Brooks's arm away and left the room.  Brooks grabbed K.B.'s wrist when she was leaving.  K.B. went to her parents' bathroom and showered, "scrubb[ing] [her] body."

A fifth incident occurred after Thanksgiving 2018.  Brooks verbally called to K.B., and she went to his room.  He touched her breasts and her vagina.  Then he put his fingers inside of her vagina again.  She left and went to her parents' bathroom to shower.

During one of the incidents, Brooks asked K.B. to touch his penis and she refused.  In another incident, Brooks maturbated while touching K.B.  Brooks told K.B. not to tell anyone about their encounters.

K.B. felt like she had to listen when Brooks asked her to do something, and, because he was her grandfather, she could not tell him no.  The encounters finally stopped when K.B. went "to health classes, and . . . learned about sexual assault and abuse."  The classes made K.B. realize that something was not right.

In 2023, when K.B. was 16, she "was depressed" and "having some suicidal thoughts."  A coworker encouraged her to tell her father, Joshua Brooks, about her feelings.  After doing so, the two of them went through a list of therapists and ultimately picked one for her to see.  Before the

first appointment, K.B. filled out a questionnaire with her father. The questionnaire asked if K.B. had ever been sexually assaulted and K.B. indicated that she had. A day later, Joshua sat with K.B. in the car in the driveway after she got off work and asked her specifically what she meant. K.B. told her father that "Grandpa" had sexually assaulted her. The next morning, the two of them went to the police station and K.B. told law enforcement officers about the incidents. K.B. then sought a protective order against Brooks, and he moved out of the family home.

Brooks was subsequently arrested and criminally charged. On November 8, 2023, Brooks was indicted on eight counts of indecent liberties with a child by a custodian in violation of Code § 18.2-370.1, four counts of aggravated sexual battery of a victim under the age of 13 in violation of Code § 18.2-67.3(A)(1), and two counts of object sexual penetration in violation of Code § 18.2-67.2(A)(1) and (B)(2). On December 5, 2023, the grand jury indicted Brooks on 24 more counts of indecent liberties with a child by a custodian, 6 more counts of object sexual penetration, and 12 more counts of aggravated sexual battery of a victim under the age of 13.[4] A three-day jury trial followed.

*Voir Dire*

During voir dire, one juror, Juror Green, indicated that he might find it difficult to deliberate if he were the only person in disagreement with the majority. When Brooks asked him to explain this response, Juror Green stated, "Once I've made up my mind, it's already made depending on the fact and whatnot. It's an informed decision. If I believe it, that's what I believe, and nobody is going to change that." Brooks then moved to strike him for cause saying, "it sounds like Mr. Green isn't willing to deliberate. . . . It doesn't sound like he would be

---

[4] The Commonwealth ultimately moved to nolle prosequi 22 of the 32 counts of indecent liberties with a child by custodian, 5 of the 8 counts of object sexual penetration, and 9 of the 16 counts of aggravated sexual battery of a victim under the age of 13.

impartial once he's locked himself in." The Commonwealth responded by saying, "I heard exactly the opposite."

The trial court agreed with the Commonwealth, saying, "I think I heard the opposite, too." The trial court then added, "I was wondering because it seemed opposite to the question you were asking." The Commonwealth summed up its view of Juror Green's answer, stating, "To me, once he had an informed decision, he was willing to discuss, but once his mind was made up, then he wasn't going to change, which is what we want of jurors. We want them to stand strong in what they believe." After hearing further argument, the trial court stated, "Like the Commonwealth, I heard that he was the opposite of what I thought you were asking."

The trial court then informed Brooks that it could call Juror Green back for additional questioning. Brooks declined to do so and made no further attempts to clarify the record on this point. The trial court then denied Brooks's motion to strike Juror Green for cause and finalized the jury.

*The Trial*

At trial, the Commonwealth presented evidence as set forth above. At the conclusion of the Commonwealth's evidence, Brooks moved to strike several of the counts. On the indecent liberties charges, Brooks argued that he did not have a custodial relationship with K.B. because there was no evidence that he babysat, supervised, or took K.B. to school and her parents were in the home supervising her when she was there. The trial court denied Brooks's motion to strike.

Brooks then testified on his own behalf. He acknowledged that when K.B. was 11 or 12, she would go to his room to "play games on Facebook." He admitted that, at times, he and K.B. were alone in his room while she played games. Brooks testified that when K.B. came to his room, he watched television and played on his phone but also asked her about her day and how school was going.

He denied touching either her breasts or vagina. He testified that he suspected that K.B.'s allegations arose from "the turmoil in the house" and said that K.B.'s mother told the children not to listen to him or pay attention to him. He claimed that "a good chunk" of the allegations arose from K.B.'s mother's distaste for him.

Brooks thought he had a good relationship with K.B. because they would "just hang out and talk and watch TV and play games." He said his relationship with K.B. did not change after 2018. Brooks said that K.B. "always came" to him "want[ing] to do some project," like the time she wanted to bake a cake, and he would give her money for supplies. Brooks acknowledged that he hung out with K.B. in his room "pretty frequently." Brooks said they would hang out "right after dinner or when she'd get home from school" and that K.B. asked him "to help with her homework" but when they did homework, they sat at the dining room table.

After the defense rested, Brooks again moved to strike. The court overruled his motion to strike the three counts of object sexual penetration as well as the seven counts of aggravated sexual battery. Brooks also moved to strike all ten counts of indecent liberties on the grounds that he was never in a custodial relationship with K.B. He argued that the evidence showed that her parents were always in the home and that they were the ones who cared for the children. He also moved to strike the indecent liberties charges because there were only four incidents where the evidence supported that he fondled K.B. with lascivious intent. He argued that the statute did not define untying pants as indecent liberties. He also argued that a hand on a breast and hand on a vagina in one incident only equated to one indecent liberties charge and asked the trial court "to strike all of those that are two counts."

The trial court largely denied Brooks's motion to strike. It deemed the evidence sufficient to establish a custodial relationship and ruled that "the touching of two separate

intimate parts[] can count as separate counts."  But the trial court did strike one count of indecent liberties, ruling that the attempt to untie K.B.'s pants was not enough for a separate charge.

The jury found Brooks guilty of the nine remaining counts of indecent liberties with a child by a custodian, all seven counts of aggravated sexual battery, and two counts of object sexual penetration.  The jury found Brooks not guilty of one count of object sexual penetration.

*Post-Trial Motions*

In June 2024, Brooks filed two motions to set aside the verdict.  He argued that five of his nine indecent liberties convictions should be dismissed because "there were only four incidents where the victim accused the defendant of sexual abuse."  The trial court heard oral argument on these two motions.  The court then issued a letter opinion on October 29, 2024, and denied Brooks's motions by order dated November 1, 2024.

ANALYSIS

Brooks argues that the trial court should have struck Juror Green for cause, that he was not in a custodial relationship with his granddaughter, and that there was insufficient evidence to support the ninth count of indecent liberties because the evidence only showed he was masturbating with his hand under his pants.  We review each argument in turn.

I. The trial court did not err by concluding Juror Green was qualified to serve as a juror.

"[A] trial court's denial of a motion to strike a juror for cause 'will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.'"  *Keepers v. Commonwealth*, 72 Va. App. 17, 43 (2020) (alteration in original) (quoting *Townsend v. Commonwealth*, 270 Va. 325, 329-30 (2005)).  "A manifest error occurs when the record shows that a prospective juror cannot or will not lay aside his or her preconceived opinion."  *Id.* (quoting *Taylor v. Commonwealth*, 67 Va. App. 448, 456 (2017)).  A manifest error is not an abuse of discretion unless "'reasonable jurists' could not disagree as to the proper decision."

*Warren v. Commonwealth*, 76 Va. App. 788, 799 (2023) (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)).

"The right to an impartial jury is protected by the United States and Virginia Constitutions and by statute." *Keepers*, 72 Va. App. at 42 (citing U.S. Const. amend. VI; Va. Const. art. I, § 8; Code §§ 8.01-357 to -358). "Trial courts, as the guardians of this fundamental right, have the duty to procure an impartial jury." *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995). "A prospective juror who is biased, prejudiced, or who 'persists in a misapprehension of law that will render him incapable of abiding the court's instructions and applying the law, must be excluded for cause' because such a juror cannot be impartial." *Id.* (quoting *Sizemore v. Commonwealth*, 11 Va. App. 208, 211 (1990)). In assessing a juror to determine impartiality, "the appellate court reviews the *voir dire* of each juror as a whole, not just isolated statements by that juror." *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019). "It is prejudicial error for the trial court to force a defendant to use peremptory strikes to exclude a venireman from the jury panel if that person is not free from exception." *Townsend*, 270 Va. at 329.

Here, Brooks argues that the trial court abused its discretion in denying his motion to strike Juror Green because, according to Brooks, it was clear that Juror Green would not follow the trial judge's instructions. Brooks contends that Juror Green's answers in voir dire indicated that he could not comply with the court's instruction "to consult with one another and deliberate with a view towards reaching an agreement" or the instruction that "a juror should not hesitate to re-examine his or her own views and change his or her opinion if convinced it is in error."

We defer to the trial court's conclusion that Juror Green could be fair and impartial and would comply with the court's instructions. The trial court could assess the inflections, tone, and tenor of the dialogue as well as Juror Green's demeanor. *See Castillo v. Commonwealth*, 70

Va. App. 394, 423 (2019). Statements from a "cold transcript" are "devoid of the emphasis given to each word." *Taylor*, 67 Va. App. at 460 n.2. Even if Juror Green's comments were ambiguous about whether he would not change his mind after he had fully deliberated or whether he would not deliberate after he made up his mind, the trial court was in the best position to assess his remarks. This is particularly true since prospective jurors represent a cross section of the community with different education levels and experience, and unlike witnesses, they are not briefed by lawyers before taking the stand. *Patton v. Yount*, 467 U.S. 1025, 1039 (1984). As a result, jurors cannot be expected to express themselves "carefully or even consistently" and it is the trial court that is "best situated to determine competency to serve impartially." *Id.*

Furthermore, the trial judge struck 20 other jurors for cause. But the trial court concluded that Juror Green would deliberate with his fellow jurors and did not strike him from the venire.[5] This conclusion is not manifest error because none of Juror Green's answers indicated that he had any "preconceived opinion," much less one that he could not see past. *See Taylor*, 67 Va. App. at 456. Instead, he affirmed that he would listen to the "facts and whatnot" and would have no issue applying the law of the case. Viewing his statements in the light most favorable to the Commonwealth, and deferring to the trial court's assessment of his tone and demeanor, we cannot say the trial court abused its discretion by not striking Juror Green for cause. *See Keepers*, 72 Va. App. at 43-45 (recognizing that appellate courts "defer to the trial court to

---

[5] Viewed in context, the trial court's "I heard the opposite" comment signified the trial court's disagreement with Brooks's understanding of Juror Green's answer. That is, Brooks had just argued in his oral motion to strike that Juror Green's answer indicated that he *was not* "willing to deliberate," and the trial court disagreed with this construction, finding instead that Juror Green's answer indicated the opposite—that he *was* willing to deliberate.

resolve any potentially equivocal statements because of its opportunity to observe the juror's tone and demeanor").[6]

Brooks's efforts to compare this case to others are also unpersuasive. He first suggests this case is like *Green v. Commonwealth*, 262 Va. 105 (2001). But there the prospective juror "suppose[d]" the defendant was guilty based on what she had read in the paper and stated that the defendant "[would] have to prove him[self] innocent." *Id.* at 112-14. Here, Juror Green knew nothing about the case beforehand, and he did not show any bias against the defendant. Nor was there any suggestion that he would apply the incorrect legal standard. *See Simmons v. Commonwealth*, 63 Va. App. 69, 75 (2014) (upholding the trial court's decision to deny a motion to strike because "[n]one of the three jurors said they would substitute their own personal views for the instructions given by the court"). Instead, Juror Green said he would decide the case based on the law and the facts, clarifying in response to Brooks's questions that he would stand by his decision even if other jurors disagreed with him.

Brooks's reliance on *Andrews v. Commonwealth*, 280 Va. 231 (2010), is also misplaced. The prospective juror there unequivocally stated that she would require the Commonwealth to satisfy a burden of proof beyond what is required by law, explaining that she had to rely on a "higher authority." *Id.* at 257. The Virginia Supreme Court found the trial court's decision to strike that juror for cause did not constitute an abuse of discretion, noting that the trial court was able to consider the juror's demeanor in "judging whether she would be able to properly follow

---

[6] If Brooks had a different understanding from the trial court as to the import of Juror Green's answers, Brooks could have asked Juror Green additional questions—something the trial court gave him a chance to do after it cast doubt on Brooks's pending motion to strike. Though Brooks had no obligation to try to rehabilitate a juror who could not follow the court's rules, by not asking additional questions, we are left to rely on only a few ambiguous comments from Juror Green and the trial court's discretion in interpreting them.

the court's instructions." *Id.* Not only was there no suggestion Juror Green would not apply to proper burden of proof, *Andrews* affirms that deference to the trial court is appropriate.

Because the trial court's assessment of Juror Green's competency to serve impartially was not plainly wrong or without evidence to support it, there was no manifest error that was an abuse of discretion here. *See Keepers*, 72 Va. App. at 43-44.

## II. There was sufficient evidence that Brooks had a supervisory relationship with the victim.

Brooks argues that the evidence was insufficient to show that he had a supervisory relationship with the victim. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)).

A conviction for indecent liberties under Code § 18.2-370.1 requires proof of a "custodial or supervisory relationship." *See Sadler v. Commonwealth*, 276 Va. 762, 764-65 (2008). In analyzing Code § 18.2-370.1, Virginia appellate courts construe the term "custody" broadly, going beyond legal custody to include informal or temporary custody. *Kolesnikoff v. Commonwealth*, 54 Va. App. 396, 404 (2009); *see also Guda v. Commonwealth*, 42 Va. App. 453, 459 (2004) (holding that an earlier version of the statute did not "require the specific entrustment of the child to the care of the adult to create a custodial or supervisory relationship"). Such a reading of the statute is consistent with the statute's purpose—"to protect minors from adults who might exploit certain types of relationships." *Sadler*, 276 Va. at 765. Whether such a relationship exists at the time of the offending conduct is a question of fact. *Id.*

In *Sadler*, for example, this Court affirmed a finding that the defendant held a position of trust with the victim because he coached the victim's softball team and supervised her athletic activities for two years. *Id.* at 764-66. Similarly, in *Kolesnikoff*, this Court affirmed the trial court's conviction because the evidence at trial showed that the defendant had a longstanding relationship with the victim's family, that the victim accompanied the defendant's family on several vacations, and the victim frequently spent the night at defendant's house. 54 Va. App. at 404. And more recently, in *Saravia v. Commonwealth*, No. 0318-22-4, slip op. at 5, 2023 Va. App. LEXIS 68, at *7 (Jan. 31, 2023), this Court upheld a conviction in which the defendant, his fiancé, and her children treated each other as family, preparing and eating meals together, and participating in family activities together, with the defendant taking the victim and her sibling shopping for necessities and gifts.[7] This Court held that a reasonable factfinder could conclude that the defendant had engaged in a voluntary course of conduct that created a supervisory or custodial relationship, even without an explicit parental delegation of responsibility. *Id.*

Here, the evidence was more than sufficient to establish a "custodial or supervisory relationship" under Code § 18.2-370.1. *See Sadler*, 276 Va. at 766. Not only did Brooks live with K.B., K.B. testified that she felt like she had to listen to Brooks when he asked her to do something because he was her grandfather. Brooks himself testified that K.B. regularly went to his room to "play games on Facebook" when she was 11 or 12 years old. He added that there were times when K.B. was alone with him in his room and that she hung out in his room with him "pretty frequently." He acknowledged that he helped her with her homework and that she "always came" to him when she wanted to do a project. Further underscoring the closeness of their relationship, the jury heard testimony that the family typically had dinner together every

---

[7] While not binding, unpublished cases may be cited as persuasive authority. Rule 5A:1(f); *Smith v. Commonwealth*, 78 Va. App. 371, 383 n.4 (2023).

night.  *See Saravia*, slip op. at 5, 2023 Va. App. LEXIS 68, at *7.  Based on these facts, a reasonable juror could find a "custodial or supervisory relationship" under Code § 18.2-370.1. *See Sadler*, 276 Va. at 765-66.

Brooks disagrees, pointing to *Hutton v. Commonwealth*, 66 Va. App. 714, 726 (2016) (reversing a conviction under Code § 18.2-370.1(A) where there was "no affirmative action establishing a supervisory relationship between" the defendant and victim and no evidence of a "supervisory obligation").  But in *Hutton*, the victim did not live with the defendant, nor was the defendant a family member.  *See id*. at 716-17, 726-27.  Here, by living with the family and assuming a traditional grandfatherly role, Brooks was sometimes responsible for K.B.'s care. *See Guda*, 42 Va. App. at 459.  Brooks's exploitation of their relationship is precisely the type of offense that Code § 18.2-370 was intended to address.  *See Sadler*, 276 Va. at 765.  As a result, *Hutton* does change our conclusion that the evidence was sufficient here.

III.  Brooks waived his argument about the ninth count of indecent liberties with a child.

Brooks also argues on appeal that the evidence was insufficient to support the ninth count of indecent liberties with a child, which referred to his masturbation while touching K.B.  Brooks argues that such acts did not constitute an exposure of his genitals or a proposal for K.B. to touch his genitals under Code § 18.2-370.

This assignment of error is not properly before us because, under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."  Under this rule, the party seeking reversal on appeal must have made the same argument in the trial court that he wishes to present on appeal.  *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002).  The purpose of this rule is to "alert opposing counsel to the issue and to provide the trial court an opportunity to intelligently rule on the issue."  *Commonwealth v. Carolino*, 303 Va. 399, 409 (2024).

Brooks did not raise this challenge to the ninth indecent liberties count at trial in either of his two motions to strike or in his motion to set aside the verdict. *See Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) (recognizing that a "general argument or an abstract reference to the law is not sufficient to preserve an issue" and that making a "specific argument on an issue does not preserve a separate legal point on the same issue for review"); *Flowers v. Commonwealth*, 84 Va. App. 143, 159 (2025) (holding that the defendant's "objection was not sufficiently specific to alert the trial court to his current claim"). As a result, this challenge is waived.

Brooks contends, in the alternative, that the ends of justice exception to Rule 5A:18 applies. Under this exception, courts do not simply review the sufficiency of the evidence under the usual standard; we instead determine whether the record contains affirmative evidence of innocence or lack of criminal offense. *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016). "In order to avail himself of this exception to 5A:18, the appellant must 'affirmatively show . . . the error [was] clear, substantial and material.'" *Masika v. Commonwealth*, 63 Va. App. 330, 334 (2014) (second alteration in original) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004)). Here, Brooks cannot meet this demanding standard because he has not affirmatively shown that his masturbation while touching his granddaughter did not violate the indecent liberties statute.

A person in a custodial or supervisory relationship with a child can take indecent liberties, as defined by Code § 18.2-370.1, in six capacities. One such capacity is where a person "exposes his or her sexual or genital parts to such child." Code § 18.2-370.1(A)(iii). The Supreme Court of Virginia has held that the word "expose," as used in Code § 18.2-370, "requires a visual display where the genitalia are seen, or where there is a possibility that they could be seen." *Farhoumand v. Commonwealth*, 288 Va. 338, 347 (2014). In arriving at that

holding, the Supreme Court adopted this Court's decision in *Siquina v. Commonwealth*, 28 Va. App. 694, 699 (1998), where we explained exposure requires "a reasonable probability . . . that [a defendant's genitalia] might be seen by that child, regardless of the child's actual perception." To meet the ends of justice exception, Brooks must affirmatively show that there was not a reasonable probability that his granddaughter would have seen his genitalia while he was masturbating under his clothing. He has not made this showing.[8] As a result, Brooks's challenge to the ninth indecent liberties count is waived under Rule 5A:18.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*

---

[8] Brooks's act of masturbation arguably also falls under the subsection that applies when someone "with lascivious intent, knowingly and intentionally . . . proposes that any such child feel or fondle the sexual or genital parts of such person." Code § 18.2-370.1(A)(i). Brooks has not affirmatively shown that his actions did not amount to such a proposal.